UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JAMES T. MURZIKE,

        Plaintiff,

v.                                                            Case No. 3:24-cv-162-HES-MCR

J.D. MOSELY, et al.,

        Defendants.

## ORDER

### I. Status

Plaintiff James T. Murzike, an inmate in the custody of the Florida Department of Corrections (FDC), initiated this action on February 6, 2024,[1] by filing a Complaint for Violation of Civil Rights (Doc. 1).[2] He is proceeding on an Amended Complaint (AC; Doc. 16). In the AC, he names Officer J.D. Mosely and Sergeant Jay as the Defendants.[3] See id. at 2. Murzike alleges violations of the First, Fifth, Sixth, Eighth, and Fourteenth Amendments, as

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

[2] For all pleadings and documents filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

[3] The Court previously dismissed without prejudice the claims against Defendant Jessie Montgomery. See Order (Doc. 41).

well as state tort claims for battery, assault, and negligence. See id. at 3, 14–18.

This matter is before the Court on Defendants' Motion to Dismiss. See Motion to Dismiss with Prejudice and to Revoke In Forma Pauperis Status (Motion; Doc. 23). In support of the Motion, Defendants have submitted exhibits. See Docs. 23-1 through 23-5. Murzike filed a response in opposition to the Motion. See Plaintiff['s] Unopposed Motion [to] Reply to Defendants['] Motion to Dismiss (Response; Doc. 36). The Motion is ripe for review.

## II. Murzike's Allegations[4]

Murzike alleges that on December 18, 2023, Sergeant Jay and Officer Mosely approached his cell at Florida State Prison to escort him for a haircut and shave. See AC at 14. According to Murzike, he advised Sergeant Jay and Officer Mosely "of the ongoing threats [and] food poison[ing] [and] the physical altercation with his . . . gang brothers." Id. Murzike asserts that after Officer Mosely escorted him outside of his cell, Officer Mosely allowed another inmate gang member to "batter" him and squirty deadly chemicals into his face. Id. Officer Mosely then slammed Murzike's face, head, and shoulders against the

---

[4] In considering Defendants' Motion, the Court must accept all factual allegations in the AC as true, consider the allegations in the light most favorable to Murzike, and accept all reasonable inferences that can be drawn from such allegations. See Holland v. Carnival Corp., 50 F.4th 1088, 1093 (11th Cir. 2022). As such, the facts recited here are drawn from the AC, and may well differ from those that ultimately can be proved.

cell door while he punched Murzike. See id. at 15. Sergeant Jay repeatedly stabbed Murzike with an ink pen. See id. Murzike alleges that he was handcuffed throughout the incident. See id. Murzike asserts that he was denied medical treatment for his injuries. See id. And Officer Mosley allegedly filed a false disciplinary report in connection with the incident. See id.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262–63 (11th Cir. 2004). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (quotations, citation, and original alteration omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give a court license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in

4

order to sustain an action.'" Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168–69 (11th Cir. 2014) (quoting GJR Invs., Inc. v. Cnty. of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998), overruled in part on other grounds as recognized in Randall, 610 F.3d at 709).

## IV. Summary of Defendants' Arguments

In their Motion, Defendants ask the Court to dismiss the AC because: (1) Murzike failed to exhaust his administrative remedies; (2) Murzike failed to give pre-suit notice of his state law claims; (3) video evidence conclusively refutes Murzike's allegations; (4) Murzike failed to allege violations of the First, Fifth, Sixth, or Fourteenth Amendments; (5) criminal charges and transfer to another institution are not available types of relief; (6) punitive damages are statutorily barred; and (7) as a three-strikes litigant, Murzike may not proceed as a pauper. See generally Motion.

## V. Exhaustion of Administrative Remedies

### A. Prison Litigation Reform Act (PLRA) Exhaustion

The Eleventh Circuit Court of Appeals has held the exhaustion of administrative remedies by a prisoner is "a threshold matter" to be addressed before considering the merits of a case. Chandler v. Crosby, 379 F.3d 1278, 1286 (11th Cir. 2004); see also Myles v. Miami-Dade Cnty. Corr. & Rehab.

5

Dep't, 476 F. App'x 364, 366 (11th Cir. 2012)[5] (noting that exhaustion is "a 'threshold matter' that we address before considering the merits of the case") (citation omitted). Therefore, the Court turns first to the question of whether Murzike properly exhausted his administrative remedies. It is well settled that the PLRA requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before asserting any claim under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 524 (2002). A prisoner such as Murzike, however, is not required to plead exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" Id. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). Not only is there an exhaustion requirement, the PLRA "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to

---

[5] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. Gov't Emps. Ins. Co., 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

6

> do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so <u>properly</u> (so that the agency addresses the issues on the merits)." Pozo,[6] 286 F.3d, at 1024 (emphasis in original).

Woodford, 548 U.S. at 90. And "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Id.

The United States Supreme Court has instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" Ross v. Blake, 578 U.S. 632, 648 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting Goebert v. Lee Cnty., 510 F.3d 1312, 1322–23 (11th Cir. 2007)).

Because failure to exhaust administrative remedies is an affirmative defense, Defendants bear "the burden of proving that [Murzike] has failed to exhaust his available administrative remedies." Id. at 1082. In accordance with

---

[6] Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002).

Eleventh Circuit precedent, a court must employ a two-step process when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. See Turner, 541 F.3d at 1081. In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082–83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015). At step two of the procedure established in Turner, the Court can consider facts outside the pleadings as long as those facts do not decide the case and the

parties have had sufficient opportunity to develop the record.[7] Bryant, 530 F.3d at 1376; see also Jenkins v. Sloan, 826 F. App'x 833, 838–39 (11th Cir. 2020). In evaluating whether Murzike has satisfied the exhaustion requirement, the Court notes that the Eleventh Circuit has determined that a "prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." Parzyck v. Prison Health Servs., Inc., 627 F.3d 1215, 1218 (11th Cir. 2010).

## B. Florida's Prison Grievance Procedure

State law "determines what steps are required to exhaust." Dimanche v. Brown, 783 F.3d 1204, 1207 (11th Cir. 2015); see also Jones, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDC provides an internal grievance procedure for its inmates. See Fla. Admin. Code R. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must

---

[7] In an unpublished decision, the Eleventh Circuit suggests that a pro se plaintiff must receive notice of his opportunity to develop the record on exhaustion. See Kinard v. Fla. Dep't of Corr., No. 24-10359, 2024 WL 4785003, at *7 (11th Cir. Nov. 14, 2024) (per curiam). Here, the Court notified Murzike that he had forty-five days to respond to any motion to dismiss. See Notice to Pro Se Litigant (Doc. 3) at 3. Murzike responded to Defendants' Motion and addressed the exhaustion argument. See Response at 2–5. He does not request discovery or suggest that he needs any additional information to respond to the Motion. As such, Murzike has received notice and an opportunity to develop the record on exhaustion.

submit an informal grievance at the institutional level to a designated staff member responsible for the specific problem. See Fla. Admin. Code R. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. See Fla. Admin. Code R. 33-103.006. If the matter is not resolved through formal and informal grievances, the inmate must file an appeal to the Office of the FDC Secretary. See Fla. Admin. Code R. 33-103.007. However, under certain specified circumstances, an inmate can bypass the informal-grievance stage and start with a formal grievance at the institutional level. See Fla. Admin. Code R. 33-103.005(1); 33-103.006(3). Or an inmate can completely bypass the institutional level and proceed directly to the Office of the FDC Secretary by filing a "direct grievance." See Fla. Admin. Code R. 33-103.007(3). Emergency grievances and grievances of reprisal are types of "direct grievances" that may be filed with the Office of the FDC Secretary. See Fla. Admin. Code R. 33-103.007(3)(a).

Florida Administrative Code Rule 33-103.011 provides time frames for the submission of grievances. Informal grievances must be received within twenty days from the date on which the grieved incident or action occurred. See Fla. Admin. Code R. 33-103.011(1)(a). Formal grievances must be received no later than fifteen days from the date of the response to the informal grievance. See Fla. Admin. Code R. 33-103.011(1)(b). Similarly, grievance

appeals to the Office of the FDC Secretary must be received within fifteen days from the date that the response to the formal grievance is returned to the inmate. See Fla. Admin. Code R. 33-103.011(1)(c). According to Rule 33-103.014, an informal grievance, formal grievance, direct grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more . . . conditions are found to exist." Fla. Admin. Code R. 33-103.014(1). The rule provides an enumerated list as "the only reasons for returning a grievance without a response on the merits." See Fla. Admin. Code R. 33-103.014(1)(a)–(y). A grievance can be returned without action if it: is untimely; "addresses more than one issue or complaint"; is "so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to"; is "not written legibly and cannot be clearly understood"; is a supplement to a previously-submitted grievance that has been accepted for review; does not "provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable"; or does not include the required attachments. See Fla. Admin. Code R. 33-103.014(1).

### C. The Parties' Positions Regarding Exhaustion

Defendants argue that Murzike failed to properly complete the FDC's three-step grievance process before he filed the initial Complaint on February

11

6, 2024. <u>See</u> Motion at 4–7. In support of their assertion, Defendants submit declarations from Jacqueline Spanios, a Correctional Officer and Grievance Coordinator at Suwannee Correctional Institution, and Lawanda Sanders-Williams, FDC Operation Analyst. <u>See</u> Docs. 23-1 at 1–2, 23-2 at 1–2.

In her declaration, Spanios states that between December 18, 2023, and February 4, 2024, Murzike filed seventeen informal grievances and sixteen formal grievances; however, "[n]one of the grievances complained of abuse or excessive use of force on December 18, 2023." Doc. 23-1 at 1. The grievance log and grievances attached to Spanios's declaration confirms that Murzike filed no relevant informal or formal grievances during that time. <u>See</u> <u>id.</u> at 4–7, 9–25, 27–66.

In her declaration, Sanders-Williams states that between December 18, 2023, and February 6, 2024, Murzike filed thirty-nine grievance appeals. <u>See</u> Doc. 23-2 at 1. "One of these appeals [log# 23-6-40226], filed December 18, 2023, described events that occurred December 18, 2023." <u>Id.</u>; <u>see also</u> Doc. 23-2 at 10. The FDC Secretary returned the grievance without action, stating:

> This grievance is not accepted as a grievance of reprisal.
>
> Your request for administrative appeal is in non-compliance with the Rules of the Department of Corrections, Chapter 33-103, Inmate Grievance Procedure. The rule requires that you first submit your grievance at the appropriate level at the

12

> institution. You have not done so, or you have not provided this office with a copy of that grievance, nor have you provided a valid or acceptable reason for not following the rules.
>
> Upon receipt of this response, if you are within the allowable time frames for processing a grievance, you may resubmit your grievance at your current location in compliance with Chapter 33-103, Inmate Grievance Procedure.
>
> Based on the foregoing information, your grievance is returned without action.

Doc. 23-2 at 9. According to Sanders-Williams, "[n]o other appeal referenced other misconduct or events occurring on December 18, 2023." Id. at 2.

Murzike responds that on December 19, 2023, he filed a grievance concerning the incident "to [the] warden [and] also to [the] secretary." Response at 3. He cites to "formal grievance #23-6-40226." Id. Further, Murzike alleges that he "file[d] other grievances informal [and] formal concerning the physical abuse [and] the false d.r." that he received from the incident. Id. According to Murzike, he never received "any of those grievances back or appeals back . . . ." Id.; see also id. at 4. Murzike speculates that prison officials "intercepted" these grievances in reprisal for him "filing lawsuits [and] grievances on staff[] . . . ." Id. at 4.

13

### D. Turner Step One

Under the first step of the Turner analysis, the Court must review the allegations in the Motion and Response and accept as true Murzike's allegations. See Whatley, 802 F.3d at 1209. If Murzike's allegations in the Response show a failure to exhaust, then dismissal would be appropriate. See id.

Accepting Murzike's view of the facts as true, the Court finds dismissal of the claims against Defendants for lack of exhaustion is not warranted at the first step of Turner. Thus, the Court proceeds to the second step of the two-part process and considers Defendants' arguments about exhaustion and makes findings of fact.

### E. Turner Step Two

As dismissal would not be appropriate based on the allegations in the Motion and Response, the Court next turns to the second prong of the Turner analysis. Based on the record, Murzike failed to properly exhaust his administrative remedies because he did not comply with the FDC's grievance procedure. While he submitted a direct grievance about the assault, the FDC Secretary returned it without action because he did not include his formal grievance as required nor did he provide a valid reason for bypassing previous levels of review. Doc. 23-2 at 9; see Fla. Admin. Code R. 33-103.014(1)(f)–(g).

14

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Woodford, 548 U.S. at 90. Therefore, Murzike did not properly exhaust his administrative remedies because his grievance about the incident failed to comply with FDC procedural requirements.

Murzike maintains that he submitted grievances regarding the incident, but he never received responses because prison officials intercepted them. See Response at 3–4. However, reliable evidence, such as sworn declarations and grievance logs, supports the conclusion that Murzike never submitted any relevant grievances at the institutional level, and he submitted only one relevant grievance at the appeal level that did not comply with FDC procedural requirements. See Docs. 23-1, 23-2. Moreover, this same evidence shows that Murzike has filed numerous grievances since December 18, 2023, that produced responses. See id. Murzike's history of filing grievances, by itself, is "evidence that the defendants did not make administrative remedies unavailable to him or . . . destroy his grievances." Whatley v. Smith, 898 F.3d 1072, 1083 (11th Cir. 2018). Considering the pleadings and the record evidence, the Court credits Defendants' declarations and exhibits over Murzike's assertions. Therefore, Defendants' Motion is due to be granted based upon the contention that Murzike failed to exhaust his administrative

remedies.[8]

## VI. State Law Claims

In the AC, in addition to his federal § 1983 claims, Murzike also asserts claims for relief under Florida state law, including claims of assault, battery, and negligence. See AC at 16–18. However, the Court has determined that Murzike's federal § 1983 claims over which the Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 are due to be dismissed. Thus, the Court must now consider whether to continue to exercise supplemental jurisdiction over the remaining state law claims.

"The decision to exercise supplemental jurisdiction over pend[e]nt state claims rests within the discretion of the district court." Raney v. Allstate Ins. Co., 370 F.3d 1086, 1088–89 (11th Cir. 2004). Pursuant to 28 U.S.C. § 1367(c), the Court may decline to exercise jurisdiction over a state claim if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or

---

[8] Because the Court has determined that Murzike did not exhaust his administrative remedies using the FDC's three-step grievance process, the Court will not address Defendants' remaining arguments.

> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).[9] Notably, "[a]ny one of the section 1367(c) factors is sufficient to give the district court discretion to dismiss a case's supplemental state law claims." Parker v. Scrap Metal Processors, Inc., 468 F.3d 733, 743 (11th Cir. 2006). However, upon determining that it has the discretion under § 1367(c) to decline jurisdiction, "[a district court] should consider the traditional rationales for pendent jurisdiction, including judicial economy and convenience in deciding whether or not to exercise that jurisdiction." Palmer v. Hosp. Auth. of Randolph Cnty., 22 F.3d 1559, 1569 (11th Cir. 1994). Upon due consideration, the Court finds that judicial economy and convenience would not be served by retaining jurisdiction over Murzike's state law claims. Thus, the Court declines to exercise supplemental jurisdiction over these claims.

For the reasons set forth above, the Court has determined that the § 1983 claims in the AC, over which the Court has original jurisdiction, are due to be dismissed. What remain are uniquely state law claims that are best addressed by the state courts. The Court has not issued any dispositive rulings pertaining to the state law claims, and no discovery deadlines have been set. Thus, the

---

[9] In § 1367, Congress codified the concepts of pendent and ancillary jurisdiction under the umbrella label of supplemental jurisdiction. Artis v. District of Columbia, 583 U.S. 71, 74 (2018).

17

procedural posture of the case weighs in favor of declining jurisdiction to allow the case to proceed fully in state court. Moreover, when, as here, the federal claims are dismissed prior to trial, the Eleventh Circuit Court of Appeals has "encouraged district courts to dismiss any remaining state claims." Raney, 370 F.3d at 1089; Busse v. Lee Cnty., 317 F. App'x 968, 973–74 (11th Cir. 2009) ("Since the district court 'had dismissed all claims over which it has original jurisdiction,' it therefore had the discretion not to exercise supplemental jurisdiction over [Appellant's] state law claims. 28 U.S.C. § 1367(c)(3). Furthermore, we expressly encourage district courts to take such action when all federal claims have been dismissed pretrial."); see also Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").

Upon consideration of the § 1367 factors and the "traditional rationales for pendent jurisdiction, including judicial economy and convenience," see Palmer, 22 F.3d at 1569, the Court declines to exercise supplemental jurisdiction over Murzike's remaining state law claims. Accordingly, Murzike's state law claims, including those for assault, battery, and negligence, are due

18

to be dismissed without prejudice to Murzike refiling these claims in the appropriate state court.

Accordingly, it is now **ORDERED**:

1. Defendants Mosely and Jay's Motion to Dismiss (Doc. 23) is **GRANTED to the extent** that they seek dismissal of the claims against them for Murzike's failure to exhaust his administrative remedies. In all other respects, the Motion is denied.

2. Murzike's state law claims are **DISMISSED without prejudice** to refiling in the appropriate state court.

3. Murzike's Amended Complaint (Doc. 16) is **DISMISSED without prejudice**.

4. The **Clerk** shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 11th day of August, 2025.

HARVEY E. SCHLESINGER
United States District Judge

Jax-9 8/7
c: James T. Murzike, #L07713
   Counsel of record